**C.E. SMITH**

v.

**CITY OF SEVEN POINTS, TEXAS,
Mark Jordan, Frank Barina and
Doug Curry.**

**No. TY–84–285–CA.**

United States District Court,
E.D. Texas,
Tyler Division.

May 6, 1985.

Harry H. Walsh, Huntsville, Tex., Ted Redington, Dallas, Tex., for plaintiff.

William R. Allensworth, Dallas, Tex., for defendant City.

John M. Smith, Longview, Tex., for defendants, Barina, Curry and Jordan.

STEGER, District Judge.

### ORDER FOR REMITTITUR OR FOR NEW TRIAL

On this day the following motions were considered: (1) Defendants' Motion for New Trial or Mistrial or Remittitur, and the plaintiff's response, (2) defendant City of Seven Points Motion for Judgment Notwithstanding the Verdict and (3) plaintiff's

Motion for Entry of Judgment. After careful deliberation, the Court is of the opinion that these motions should be disposed of in the manner set out below.

## I. BACKGROUND

The events culminating in this civil action occurred in the early morning hours of November 3, 1983. Defendants Mark Jordan and Frank Barina, acting as law enforcement officers for the City of Seven Points, Texas, stopped the plaintiff because they believed he was driving while intoxicated. At the time, plaintiff C.E. Smith, then age 73, was returning home from a local bar where he had won a shuffleboard tournament. He had with him a passenger named Wesley Bonner.

After he stopped and emerged from his pick-up truck, Smith was asked to perform a test to determine whether he was intoxicated. The test required Smith to walk along the broken shoulder of the road, a feat he refused to attempt because of an old foot injury.

At this point a fracas erupted. There was conflicting testimony concerning the cause of this altercation, but the jury's answers to the interrogatories clearly evince their conviction that Officers Jordan and Barina were most culpable.

There is little dispute over the results of the scuffle. Officer Barina struck Mr. Smith several times with a blackjack. Mr. Smith was knocked to the ground, handcuffed, arrested, and taken into custody. He suffered a cut on his head, a serious bruise on his left cheek, various other abrasions, and his clothes were dirtied. Much more significantly, Mr. Smith suffered an injury to his dignity.

For the sake of completeness, it should be noted that Officer Jordan was occupied in a struggle with Mr. Bonner during much of the time that Smith and Barina were tussling. No suit arose out of the Jordan and Bonner skirmish. It was also apparent that Officer Barina did not emerge unscathed after his encounter with Mr. Smith. He also suffered a cut on his head and some abrasions, though he did not suffer the indignity of an arrest.

A trial of this action commenced on March 4, 1985, and the jury returned its verdict on March 6, 1985. The jury decided that Officers Barina and Jordan unlawfully arrested Mr. Smith, and used excessive force in making the arrest. They also found Doug Curry, Chief of the Seven Points Police Department, liable for the injuries suffered by Smith because he failed to control his officers' known propensity for violence. Finally, the jury found that the unlawful arrest was undertaken as part of the official policy of the City of Seven Points, making the city liable along with its officers.

The jury awarded plaintiff $150,000.00 in actual damages, and assessed an additional sum of $50,000.00 each against Officer Jordan, Officer Barina, and Chief Curry as punitive damages. The total award thus amounted to exactly $300,000.00. It is the magnitude of this award that has excited the passions of counsel for the defendants and led to the three motions now to be discussed.

## II. PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT

For reasons that will quickly become apparent, plaintiff's Motion for Entry of Judgment based on the unaltered jury verdict entered on March 6, 1985, is hereby DENIED.

## III. CITY OF SEVEN POINTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

The city has requested judgment in its favor on the basis that there was no evidence that the actions of Officers Barina and Jordan were taken pursuant to official city policy. There was, however, evidence that members of the city council were aware that excessive force was used by the police force. The evidence was slim, but in the Court's opinion was sufficient to raise a fact question for the jury to decide. By their answers to the interrogatories, the jury indicated their belief that use of exces-

sive force was a persistent, widespread practice of the city that was so common and well-settled that it constituted a custom representing city policy. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984).

The Court is unwilling to substitute its view of the evidence for that of the jury's on this issue. As a practical matter, the issue is of little consequence, since apparently the same insurance policy covers both the city and the individual officers.

## IV. DEFENDANTS' MOTION FOR NEW TRIAL, MISTRIAL, OR REMITTITUR

All four defendants have joined in a motion for new trial, mistrial, or remittitur that has as its origin one overriding factor: the excessiveness of the jury's award. Using this fact as their foundation, the defendants have concluded that the jury was angry, was motivated by bias and prejudice, and did not give them a fair trial.

### A. Preliminary Matters

■ Before considering these allegations, two other matters require disposition. First, along with the contentions raised in this motion regarding the unfairness of the trial, the defendants also requested this Court to set aside the judgment with respect to the City of Seven Points and Chief Doug Curry. The request was based on the lack of evidence establishing their liability. This request thus raises the same contentions with regard to the City's liability that were denied above. The same result is dictated in Doug Curry's case. Again, although the evidence may be less than overwhelming, it was sufficient to raise a question for the jury concerning Doug Curry's knowledge of his officers' propensity for improper use of force. In their answers to the interrogatories, the jury indicated their belief that Doug Curry knew of Officer Jordan's and Officer Barina's propensity for the use of excessive force and yet he failed to control them, and that this failure was a proximate cause of plaintiff's injuries. This is sufficient to

establish his liability, and the Court is unwilling to disturb the jury's findings. *See Whitehurst v. Wright*, 592 F.2d 834, 838–839 (5th Cir.1979) (supervisor is liable when he fails to control a policeman's known propensity for improper use of force).

■ The second preliminary matter concerns potential jury confusion. It is true that one of the six jurors contacted this Court's deputy clerk to indicate that the jury intended to award only $150,000.00 instead of $300,000.00. As a general rule, jurors may not impeach their verdict by testifying to events that occurred during their deliberations. Fed.R.Ev. 606(b). Jurors may testify, however, to show that through inadvertence or mistake, the verdict actually entered differed from what the jury intended. *See, e.g., University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 547 n. 43 (5th Cir.1974) (noting that the affidavit of a juror is admissible to show that the verdict delivered was not what was actually agreed upon). In such cases, all six jurors must agree that the verdict as entered differs from what they intended. If it appears that only one or two of the jurors was confused about the result, the court may not pursue an examination of the entire jury. This is because the court is prohibited from examining the factors that influenced an individual juror to assent to the verdict. *See, e.g. United States v. Jelsma*, 630 F.2d 778, 779 (10th Cir.1980).

■ This Court did not recall the jury to investigate the purported error in this verdict for three reasons. First, there was reason to believe that the confusion in this case involved only one juror. Second, the confusion, if any, concerned only the amount of the award. The jury's findings on liability were never questioned. Third, if *all* the jurors agreed that the amount of the award was not what was intended, the proper remedy would have been to order a new trial on the issue of damages. Since this Court has decided independently that the verdict was excessive, and is now taking the action it feels appropriate, it was unnecessary to recall the jury.

## B. New Trial or Remittitur

As noted earlier, the defendants' central contention is that in light of the evidence presented, the enormity of the verdict establishes beyond doubt that the jury was motivated by bias or prejudice. Because of this, defendants have asked this Court to either grant a new trial or order a remittitur of a substantial portion of the damages awarded.

■ Decisions on motions for new trial are committed to the sound discretion of the trial court. *Reeves v. General Foods Corp.*, 682 F.2d 515, 519 (5th Cir.1982); *Valley View Cattle Co. v. Iowa Beef Processors*, 548 F.2d 1219, 1220 n. 2 (5th Cir. 1977). If the trial court feels that a remittitur is more appropriate, it must first offer plaintiff a choice between accepting a reduction in damages or proceeding with a new trial. *Higgins v. Smith International, Inc.*, 716 F.2d 278, 281 (5th Cir.1983). In reducing the level of damages, the court may not simply substitute its opinion concerning the proper amount for that of the jury. Consequently, the court may not reduce the award below the maximum amount that is supported by the evidence. *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 669 (5th Cir.1974).

■ Trial courts should employ remittitur for those verdicts that are so large as to be contrary to right reason, while requiring a new trial on issues infected by passion or prejudice. *Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir.1985). If it is clear that the issue of damages is independent of those issues relating to liability, the new trial, if any, may be limited to the question of damages. *Westbrook*, 754 F.2d at 1242; *citing Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931).

■ Summarizing the preceding discussion, it appears that this Court must answer four questions before deciding the defendants' motion for new trial. First, was the verdict excessive? Second, was the excessiveness of the verdict, if any, caused by passion or prejudice on the part of the jury? Third, if the verdict was excessive, what was the maximum amount that the jury could have awarded given the evidence submitted? Finally, if it is found to be appropriate, how much should the damages be reduced in order to set a proposed remittitur?

### 1. Excessiveness of the Verdict

This Court has concluded that the verdict entered in this action was excessive in light of the evidence presented at trial. The only evidence of past medical expenses was a dental bill for just under $900.00. Mr. Smith had this work done in late September of 1984, almost eleven months after his unlawful arrest on November 4, 1983. By deposition, the dentist indicates that plaintiff was suffering from periodontal disease that would have necessitated dental work even if the arrest had never occurred. At best, a blow from Officer Barina to Mr. Smith's mouth may have cracked a denture, accounting for a portion of the $900.00 dental bill. Mr. Smith did not receive medical attention after his arrest beyond first aid treatment administered by employees of the City of Seven Points. There was no evidence of future medical expenses.

Plaintiff's response to defendants' motion for new trial describes the "obvious pain and suffering" caused by a brutal beating. It may have been brutal in the sense that it was ruthless or unfeeling, but not in the sense that it was severe. Plaintiff refused to go to the hospital for examination or treatment after the arrest. Evidence as to severity was limited to testimony from plaintiff's wife and children saying that he looked very bad—i.e., badly bruised—the next day and for several days after the arrest.

Plaintiff's primary injury was described in his response to defendants' motion as the "shame, embarrassment, humiliation, and other mental anguish and suffering" resulting from the manner of his arrest. All of these items really amount to one thing: A loss of self-respect, with the best

descriptive word being "humiliation." It is difficult to determine how much humiliation Mr. Smith suffered, however.

■■■ Humiliation, and the pain and suffering described earlier, are abstract and speculative elements of damage that are not susceptible to precise calculation. Since there was no evidence of any actual monetary loss other than the dental bills, however, at least $149,000.00 of the $150,-000.00 award for actual damages must be assigned to these abstract and speculative elements of damage. Although they may not be precisely calculated, this Court is convinced that $149,000.00 "is simply not in the universe of rational awards on the evidence" in this action. *Howell v. Marmpegaso Compania Naviera, S.A.*, 536 F.2d 1032, 1034 (5th Cir.1976), *citing Bonura v. Sea Land Service, Inc.*, 505 F.2d at 669–670.

■■■ To help place the extravagance of this award in perspective, the Court has examined several jury awards in other police abuse cases. While the excessiveness of a verdict cannot be determined solely by comparison to awards in other cases, and has not been determined that way in this case, it is still helpful to review other verdicts. Each of the cited cases differs from the present case in some or many respects. Each, however, is similar to the extent that it involved the use of excessive force by law enforcement officers making a custodial arrest.

In *Bauer v. Norris*, 713 F.2d 408 (8th Cir.1983), the plaintiffs, Mr. and Mrs. Bauer, were walking back to their home from a restaurant at 11:00 p.m. They were stopped by a deputy sheriff one block from their home. He demanded identification. The Bauers responded by pointing to their home, explaining that they were headed in that direction. The deputy met them at their house after they had continued walking, demanded identification, and then engaged in an exchange of epithets with Mr. Bauer. After being threatened with physical harm, both Bauers were arrested, tightly handcuffed, and taken into custody. They were acquitted at a subsequent trial for disorderly conduct. After filing a § 1983 action in federal court, a federal jury awarded the Bauers a total of $15,-000.00 for the physical and emotional injuries they suffered. This award was upheld by the court of appeals after being challenged by the defendants.

In *Raley v. Fraser*, 747 F.2d 287 (5th Cir.1984), the plaintiff was arrested for public intoxication by Officer Fraser. The officer applied four choke holds on Raley, leaving Raley with bruised arms, a scraped face, welts on his wrists from the handcuffs, and a sore throat that required two visits to a doctor. The trial court awarded just $1,000.00 for pain and mental suffering on a pendent assault claim. The plaintiffs' § 1983 claims were dismissed on the basis that the officer used reasonable force to subdue Raley.

Circumstances more similar to those in the present case were presented in *Keyes v. Lauga*, 635 F.2d 330 (5th Cir.1981). A group of deputies appeared at the Keyes' residence at 5:00 a.m. to execute arrest warrants for both Mr. and Mrs. Keyes. Fearing for their children, Mr. Keyes left the house and was immediately arrested. Mrs. Keyes came out of the house, then returned to call other authorities with three of the deputies close behind. According to Mrs. Keyes' testimony, the deputies made a quick search of the house, then went after Mrs. Keyes, kicking her and beating her with nightsticks before taking her into custody. On the way to the jail and again after she was placed in her cell, Mrs. Keyes testified that she was beaten with fists and "a big black stick" by two deputies. She was charged with resisting arrest, assaulting a police officer, and disturbing the peace. These charges were ultimately dropped. 635 F.2d at 334 n. 3.

The jury awarded $75,000.00 in damages, $37,500.00 from each of the two deputies responsible for the beating. In reviewing the award, the Fifth Circuit noted that Mrs. Keyes had suffered a low-grade concussion, numbness in her left thumb, multiple bruises, and continuing headaches, night-

mares, and nervousness. Her past medical expenses totalled $329.00.

The Court noted that over $74,000.00 of the verdict was directed to speculative items of recovery, including pain and suffering and humiliation. (With regard to Mrs. Keyes' humiliation, it should be noted that her 13-year-old son witnessed the beating she received in her home.) The court nevertheless concluded that based on the evidence in the record, $75,000.00 was "beyond the maximum possible recovery" that could be awarded, and remanded the action with instructions to the district court to determine an appropriate remittitur.

■ Given the evidence presented in this action, it is manifest that $150,000.00 for actual damages plus another $150,000.00 in punitive damages is excessive. Plaintiff deserves compensation for his humiliation, but not a princely treasure.

### 2. Passion or Prejudice

■ Having determined that $300,000.00 is an excessive verdict based on the evidence presented, the Court must now determine if the jury arrived at this total through the machinations of passion and prejudice. If this was the case, the only proper remedy is to order a new trial. In the alternative, this Court could decide that the verdict was contrary to right reason, but was not the product of passion or prejudice, thus justifying the offer of a choice between remittitur or new trial.

■ The resolution of this issue requires a great reliance upon the discretion of the court. Based on his or her observation of the trial, the trial judge must determine whether the jury was impassioned or prejudiced against the defendants. In effect, the judge must speculate on the deliberations of the jury, guessing at their probable mental state. The process is ripe for abuse, whether consciously or subconsciously, depending on the trial judge's willingness to preside over a new trial.

■ Cognizant of these dangers, this Court has concluded that the jurors in this case were not infected by passion or prejudice. The size of the award, both in terms of the actual and punitive damages, clearly reflects the jury's desire to punish these defendants. The desire to punish, however, can be a product of reason rather than emotion, and can result from a rational deduction that such action is necessary. The Court believes that the jury acted on this kind of deduction in the present case, and did not act solely out of emotion or passion. In addition, there was nothing in the jury's behavior to indicate that they were predisposed—i.e. prejudiced—in the plaintiff's favor.

In light of this conclusion, the Court is of the opinion that a remittitur is appropriate.

### 3. Maximum Award

Having determined that remittitur is appropriate, the Court must next identify the maximum verdict supported by the evidence. Compensatory and punitive damages will be considered separately.

As noted earlier, nearly all of the actual injury suffered by Mr. Smith falls into a nebulous, intangible category that cannot be accurately calculated. It is difficult to place a price on humiliation and the infringement of a right.

■ The evidence presented does cast some light on the degree of humiliation that plaintiff experienced. The City of Seven Points has fewer than 1,000 occupants, including the immediate outlying areas. As in most small communities, word of plaintiff's arrest probably travelled quickly. In light of the evidence presented concerning the violent tendencies of the city's police force, however, it is also probable that many of the area's residents sympathized with Mr. Smith. Rather than being a cause for ridicule, his arrest was likely a cause for consolation and encouragement on the part of many people. The overall effect on plaintiff was possibly less a sense of humiliation and more a desire for revenge or vindication. While it occurred after the fact and is not a proper consideration for damages, the positive effect on Mr. Smith's self-respect caused by this favor-

able verdict should not be overlooked. The jury's decision alone vindicates Mr. Smith; the only question is the amount of money that will properly compensate him.

In light of these and other considerations, and after carefully reviewing the evidence presented, this Court is of the opinion that $50,000.00 is the maximum possible recovery for the injuries suffered by C.E. Smith.

▆▆▆ The question of punitive damages is different in many respects. The jury was instructed to consider the following five factors in assessing punitive damages: (1) The nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibility of the parties, and (5) the extent to which the defendants' conduct offends a public sense of justice and propriety. *See generally Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036, 1047 (5th Cir.1984). In more general terms, an award of punitive damages is generally designed to punish the wrongdoer and deter future wrongs. *Maxey v. Freightliner Corp.*, 665 F.2d 1367, 1378 (5th Cir.1982). The jury has wider discretion in assessing punitive damages while bearing in mind the five factors listed above.

▆▆▆ In reviewing the jury's award for exemplary damages, the court must consider the Texas rule that they must be reasonably proportioned to the amount of actual damages. *See Hansen*, 734 F.2d at 1047. In addition, exemplary damages are subject to the same "maximum recovery" rule that applies to compensatory damages. *See Bonura*, 505 F.2d at 669.

▆▆▆ At $150,000.00, the punitive damages awarded in this case are not unreasonably disproportionate to the actual damages of $50,000.00. That sum is, however, greater than the maximum recovery supported by the evidence. The $50,000.00 assessed against each of the three individual defendants is probably greater than twice their annual gross salary from the city. In the case of Officer Barina, an unpaid reserve officer, it is even more disproportionate. Such a sum goes too far in punishing these defendants and deterring future wrongful conduct, just as an award of twice a corporation's annual gross proceeds would be too large.

The five factors listed above also must not be ignored. In large part, Texas law proportions punitive damages to actual damages so that the punishment will fit the wrong.

In this case, the Court determined that actual damages could not have exceeded $50,000.00. This was a reduction of two-thirds of the original award. The Court believes an equivalent reduction in punitive damages is appropriate, thus bringing that total down to $50,000.00, or approximately $16,666.67 per individual defendant. This is the maximum possible recovery for punitive damages. It more than adequately punishes the individual defendants and should serve to deter future similar conduct.

### 4. Remittitur or New Trial

It is the opinion of this Court that the maximum recovery shown by the evidence in this case is $100,000.00—$50,000.00 in actual damages and $50,000.00 in punitive damages.

▆▆▆ It is, therefore, ORDERED that defendants' Motion for New Trial be GRANTED on the following conditions:

(1) If plaintiff agrees to a reduction in actual and punitive damages of $200,000.00, then defendants' motion will be DENIED and judgment will be entered in plaintiff's favor for $50,000.00 in actual damages and $50,000.00 in punitive damages.

(2) Plaintiff must indicate acceptance of the remittitur in writing on or before June 10, 1985. If this notice is not received by that date, a new trial will be scheduled.

(3) If plaintiff accepts the remittitur, plaintiff's counsel will then be given sufficient time to submit documents in support of a claim for attorneys' fees pursuant to 42 U.S.C. § 1988. Defendants will be giv-

en time to respond to this claim, and a hearing, if necessary, will be scheduled.

(4) If a new trial is necessary, it will include both the issue of liability and damages. Given the nature of this claim, plaintiff could not prove either actual or punitive damages without repeating the previous testimony regarding the occurrence in question. As such, the questions concerning liability are not "sufficiently distinct and independent" from questions concerning damages so that a new trial on the latter issue alone could be justified. *See Gasoline Products, Inc.*, 283 U.S. at 499–500, 51 S.Ct. at 514–515; *Westbrook,* 754 F.2d at 1242.

It is so ORDERED.