# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-01110-SCT

*STEVE MARTIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/96 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JULIE ANN EPPS |
| | DANNYE L. HUNTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 9/10/98 |
| MOTION FOR REHEARING FILED: | 9/24/98 |
| MANDATE ISSUED: | 11/30/98 |

**BEFORE PITTMAN, P.J., McRAE AND MILLS, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Steve Martin was indicted in a two count indictment by the Grand Jury in Scott County for possession of morphine, in violation of Miss. Code Ann. § 41-29-139(c)(1) (1993), and possession of marijuana greater than one ounce, in violation of Miss. Code Ann. § 41-29-139(c)(2)(C) (1993). Count I of the indictment pertained to the possession of morphine charge, while Count II pertained to the possession of marijuana greater than one ounce charge. The verdict of the jury read as follows:

We, the jury, find the defendant, Steve Martin guilty as charged in Count I of the indictment.

We, the jury, find the defendant, Steve Martin, guilty (sic) possession of less than one ounce of marijuana.

We, the jury, find the defendant, Steve Martin, not guilty in Count II of the indictment.

¶2. Martin was sentenced to serve a term of two (2) years in the custody of the Mississippi Department of Corrections and to pay a fine of $2000.00 and all court costs, on his conviction of Count I. (possession of morphine). As to Count II (possession of marijuana less than one ounce), Martin was fined $200.00.

¶3. On October 10, 1996, the trial court denied Martin's motion for a new trial. Martin filed his Notice of Appeal the same day. Thereafter, Martin's counsel was contacted by jurors who had read about Martin's sentence for possession of morphine in the newspaper and who informed Martin's attorney that the verdict the jurors had intended to render on the morphine charge was "not guilty". On October 24, 1996, Martin's attorney filed a motion asking the trial court to set aside the judgment and to enter a judgment of acquittal because of the mistake in the verdict. Attached to that motion were the affidavits of all twelve jurors stating that a mistake had been made in regard to the verdict and asking the court to correct the mistake so as to reflect the true jury verdict. On December 5, 1996, the trial court denied Martin's motion to set aside the judgment.

## STATEMENT OF THE FACTS

¶4. On March 10, 1996, agents of the Mississippi Bureau of Narcotics served a search warrant on a trailer belonging to Steve and Karon Martin. Jimmie Nichols, an agent with the Mississippi Bureau of Narcotics, testified that he and three other agents, served the warrant. Nichols testified that Agent Harrison knocked on the door and announced that it was the police. Martin unlocked the door and was handed the warrant. Harrison testified that the agents told Martin that they were there to search for drugs.

¶5. At that point, Martin stated to the agents that he had a quantity of marijuana in the bathroom. He led the officers to the bathroom where he retrieved a metal pan which contained what the officers believed to be marijuana and paraphernalia. The officers then conducted a further search and found a small, black film canister containing what appeared to be marijuana.

¶6. Following this search, Nichols testified that he went back into the living room with the Martins where he advised them that they were being arrested for possession of marijuana. The Martins were then given their Miranda warnings. Subsequently, Nichols told the Martins that the agents were looking for a large quantity of morphine, to which Mr. Martin answered that they did not have a large quantity, but did have a small amount. Mr. Martin proceeded to the bedroom to look for the morphine, but was unable to locate it. He called for Mrs. Martin's help in finding it. Mrs. Martin retrieved a syringe containing morphine and handed it to Nichols.

¶7. Mr. Martin denied that the Miranda warnings were ever read to him at his home. Martin and his wife denied ever having any morphine in their house. Mr. Martin admitted that he had a small amount of marijuana in his possession, but stated that it was definitely less than one ounce.

¶8. Jamela Naron, a forensic scientist with the Mississippi Crime Lab, testified that the syringe sent to her "did, indeed, contain morphine". She further testified that State's Exhibit No. 5, which was marijuana, weighed 94.8 grams. State's Exhibit No. 6, which was the film canister containing marijuana, weighed 1.3 grams. Naron testified that there are approximately 28 grams in an ounce.

¶9. At trial, Mrs. Martin was acquitted of the only charge against her which was for possession of

morphine. Mr. Martin was found of guilty of possession of morphine, guilty of possession of less than one ounce of marijuana, and not guilty of possession of more than one ounce of marijuana. It is from this jury verdict that Steve Martin appeals, assigning as error the following issues for this Court's review:

> **I. MR. MARTIN'S CONVICTION FOR POSSESSION OF MORPHINE SHOULD BE SET ASIDE, AND A JUDGMENT OF "NOT GUILTY" ENTERED IN ORDER TO REFLECT THE TRUE VERDICT OF THE JURORS ON THAT CHARGE.**

> **II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING MARTIN'S MOTION TO SUPPRESS THE MORPHINE.**

> **III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING MARTIN'S MOTIONS TO SUPPRESS HIS STATEMENTS.**

> **IV. THE EVIDENCE FAILS TO SUPPORT MARTIN'S CONVICTION FOR A SCHEDULE II CONTROLLED SUBSTANCE.**

¶10. Issue I is the controlling issue in this case. Issue IV must also be discussed. We hold Issue II to be meritless. The issuing judge had sufficient probable cause under the totality of the circumstances to issue a search warrant. Because the search warrant was based on probable cause, the morphine and marijuana were seized pursuant to a legal search and were therefore properly admitted into evidence. Martin's motion to suppress was properly denied. Likewise, we hold Issue III to be meritless. Both statements of which Martin complains were properly admitted into evidence, and the trial court did not err in denying Martin's motion to suppress. Issues I and IV are discussed below.

<u>**DISCUSSION OF LAW**</u>

> **I. MR. MARTIN'S CONVICTION FOR POSSESSION OF MORPHINE SHOULD BE SET ASIDE, AND A JUDGMENT OF "NOT GUILTY" ENTERED IN ORDER TO REFLECT THE TRUE VERDICT OF THE JURORS ON THAT CHARGE.**

¶11. As has been discussed in the facts, on October 9, 1996, a jury found Martin guilty of Count I (possession of morphine), not guilty of Count II (possession of marijuana greater than one ounce), and guilty of the lesser included offense to Count II of possession of marijuana less than one ounce. After the jury's deliberation, it returned to the courtroom, and the foreman told the judge that the jury had reached a unanimous verdict. The verdict was then handed to the judge. Court was then recessed for lunch, and resumed afterwards. The judge then instructed the jury to return to the jury room and write its verdict on a separate sheet of paper. Apparently, he had noticed, before lunch, that the jury had simply filled in the blanks on the form of verdict instruction. Later, the jury returned with its verdict. The trial court then polled the jury and asked if they had agreed to the verdict that had been handed him. Each juror responded, "Yes, sir." The verdict was read by the clerk. The trial court then, again, polled the jury asking the jurors if they agreed with the verdict that had been read. Each juror responded, "Yes, sir." The trial court then called the attorneys to his chambers and asked them if they were satisfied with the verdicts. Both attorneys responded that they were satisfied. On October 10, 1996 Martin was sentenced, and his motion for a new trial was denied by the trial court. Martin filed

his Notice of Appeal the same day.

¶12. Thereafter, Martin's attorney was contacted by jurors who had read about Martin's sentence for possession of morphine in the newspaper. The jurors informed Martin's attorney that they had not intended to find Martin guilty of possession of morphine. On October 24, 1996, Martin filed a motion asking the trial court to set aside the judgment and to enter a judgment of acquittal because of the mistake in the jury's verdict. Attached to the motion were the affidavits of all twelve jurors. Each affidavit read in pertinent part as follows:

> I, the undersigned, ...do hereby state on my oath that I was a member of the Jury in Scott County Circuit Court during the October 1996 Term and served on the trial of case number 4739 styled "State of Mississippi v. Steve Martin and Karon Martin"; the Jury voted unanimously to find the Defendants, Steve Martin and Karon Martin "Not Guilty" on the charge of possession of morphine, and I voted to find each of the Defendants "Not Guilty" on said charge of possession of morphine. I believe that a mistake has been made in regard to that verdict where Steve Martin is concerned, and I believe that the Court should correct any mistake so as to reflect the true Jury verdict for Steve Martin of "Not Guilty of Morphine." ...

¶13. On November 18, 1996, a hearing was held on Martin's motion to set aside the verdict. Martin's attorney argued that it was obvious that the jurors were confused as to which Count was for which charge. He argued that when the jury found Martin guilty of Count I, and then on the same page found him guilty of possession of less than one ounce of marijuana, that the jury thought Count I was the possession of marijuana greater than one ounce charge. The jury used a second sheet of paper to find Martin not guilty of Count II, which Martin's attorney argued, the jury thought was the morphine charge. The State argued that the jurors could not present testimony to impeach their verdict. The trial court required the court reporter to transcribe the verdict proceedings, and set Martin's motion for argument on December 5, 1996.

¶14. On December 5, 1996, the trial court heard argument on Martin's motion. Martin's attorney was allowed to proffer the testimony of the jurors which proffer consisted of the language of the jurors' affidavits. In addition, Martin's attorney stated that some of the jurors indicated that they were confused over which Count applied to which charge.

¶15. The trial judge ruled that under Uniform Circuit and County Court Rule 3.10 and Mississippi Rule of Evidence 606(b), he was precluded from setting aside the judgment of the court and entering a judgment of not guilty. Therefore, he denied Martin's motion to set aside the judgment.

¶16. Rule 3.10 of the Uniform Circuit and County Court Rules states, in pertinent part:

> After the verdict has been received by the court and entered on the record, the testimony or affidavits of the jurors shall not be received to impeach the verdict, except as permitted by the Mississippi Rules of Evidence.

URCCC 3.10. Rule 606(b) of the Mississippi Rules of Evidence provides:

> **(b) Inquiry Into Validity of Verdict or Indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the

course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying by received for these purposes.

Miss.R.Evid. 606(b).

¶17. At the outset, the State argues that the trial court was without jurisdiction to hear the motion to set aside the verdict, because Martin had divested the trial court of jurisdiction with the filing of his appeal. See M.R.A.P. 13 Cmt. (filing of notice of appeal vests jurisdiction in the Supreme Court unless otherwise provided by statute or rule.)

¶18. Martin acknowledges that as a general rule, the filing of the notice of appeal divests the trial court of jurisdiction, but argues that there are exceptions to the rule. Martin's argument is that basically trial courts have the inherent power to correct ministerial or clerical errors at any time. This argument actually bears on the merit of this assignment of error, i.e., was the verdict of the jury merely a recording error that the trial court could change to correspond to the true verdict of the jurors or would any attempt to change the verdict by accepting testimony from the jurors that it was not their intended verdict, be an impeachment of the verdict by the jurors, which is, generally, not allowed. With this in mind, the merit of this issue will be discussed before the jurisdictional question.

¶19. There are no Mississippi cases, since the adoption of the rules, addressing this particular point. Mississippi Rule of Evidence 606(b), which is identical to the federal rule, is a rule of competency. It is the general rule in this state that jurors may not be heard to impeach their verdict. *Gladney v. Clarksdale Beverage Co.,* 625 So. 2d 407, 413 (Miss. 1993)(citing *Crawley v. Illinois Central R.R.,* 248 So. 2d 774 (Miss. 1971); *Ratliff v. Nail,* 231 So. 2d 798, 800 (Miss. 1970)). See also *T.K. Stanley, Inc. v. Cason,* 614 So. 2d 942, 949 (Miss. 1992); *Brake v. Speed,* 605 So. 2d 28, 35-36 (Miss. 1992); *Fairman v. State,* 513 So. 2d 910, 915 (Miss. 1987). However, Rule 606(b) provides for two exceptions to the general rule. They are that jurors may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Miss.R.Evid. 606(b). Obviously, neither of the exceptions applies in the case *sub judice.* Our Mississippi cases have dealt primarily with these two exceptions to the rule. Therefore, it is proper and helpful to look to federal decisions and to how those courts have dealt with situations similar to the one presented in this case.

¶20. The majority of the United States Courts of Appeal recognize that Rule 606(b) does not prohibit testimony or affidavits of jurors, stating that the verdict reached was not their true verdict, but was instead a mistake due to the recording of the verdict, transmission of the verdict, or a clerical error. This has been found to be so because the challenge based on clerical error, does not challenge the "validity" of the verdict or the deliberation or mental processes of the jurors, and is therefore not the subject of 606(b).

¶21. It is axiomatic that a jury may not impeach its own verdict. This proposition dates back to the time of Lord Mansfield when he refused to consider the affidavits of jurors admitting that they had

reached their verdict by drawing lots. ***Vaise v. Delaval,*** 99 Eng.Rep. 944 (K.B. 1785). However, the rule has been limited over the years, as it is in 606(b), allowing the testimony of jurors to show extraneous prejudicial information or outside influence brought to bear on the jurors.

¶22. The purpose of Rule 606(b) is indicated by its legislative history.

> Public policy requires a finality to litigation. And common fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interests of protecting the jury system and the citizens who make it work, rule 606 should not permit any inquiry into the internal deliberations of the jurors.

S.Rep. No. 93-1277, 93d Cong., 2d Sess. 13-14 (1974), reprinted in 1974 U.S.C.C.A.N. 7060.

¶23. Although it has not been recognized by this Court, many federal courts are now applying the rule that jurors may testify that the verdict actually rendered in court was not the true verdict that the jury actually and physically voted for in the jury room. The Fifth Circuit addressed this situation in ***United States v. Dotson,*** 817 F.2d 1127 (5th Cir. 1987), modified on reh'g, 821 F.2d 1034 (5th Cir. 1987), which was a case out of the United States District Court for the Northern District of Mississippi. In that case, a defendant was charged and tried on a ten count indictment. The jury returned a verdict, that on its face, convicted the defendant on all ten counts. The district court informally polled the jury, receiving in response the nodding of twelve heads. The court then discharged the jury. Later that evening, the trial judge received a phone call from two of the jurors, who stated that contrary to the verdict read in court, the jury had voted unanimously to acquit the defendant of the tenth count of the indictment. The judge then telephoned the foreman of the jury, and he confirmed what the two jurors had said. Thereafter, the district court, acting ex parte, corrected the verdict to acquit the defendant on count ten. ***Dotson,*** 817 F.2d at 1129.

¶24. On appeal, the defendant argued that under Federal Rule of Criminal Procedure 31(d), the district court did not have the power to correct the verdict, but was instead required to either send the jury back for further deliberations or order a new trial. The Fifth Circuit recognized an exception to 606(b)'s general principle that juror testimony may not be used to impeach a verdict in cases where the verdict delivered is not the verdict actually agreed upon by the jury. ***Id.*** at 1130. The Court said:

> "'An affidavit of a juror is admissible to show that the verdict delivered was not that actually agreed upon...but a juror may not subsequently impeach a verdict by stating how it was reached." ***University Computing Co. v. Lykes-Youngstown Corp.,*** 504 F.2d 518, 547-48 n. 43 (5th Cir. 1974)(citing ***Fox v. United States,*** 417 F.2d 84, 89 (5th Cir. 1969)("It has long been well settled that the affidavit of a juror is admissible to show the true verdict or that no verdict was reached at all.")); accord ***Smith v. City of Seven Points,*** 608 F.Supp. 458, 462 (E.D.Tex. 1985)("Jurors may testify, however, to show that through inadvertence, or mistake, the verdict actually entered differed from what the jury intended."). Our research indicates that cases to which this exception applies are few and far between. Nonetheless, courts have accepted that an appropriate means to remedy a clerical error in a verdict discovered by juror affidavits is to simply amend the verdict to reflect the intent of the jury, as the district court did here.

*Id.* As is apparent, the issue in *Dotson* was whether the district court's amendment of the verdict was proper in light of the federal civil procedure rule. This is not the issue in the case *sub judice,* however *Dotson* does illustrate the Fifth Circuit's view on the issue presented for this Court's consideration.

¶25. The Fifth Circuit again visited this issue in the case of *Robles v. Exxon Corp.,* 862 F.2d 1201 (5th Cir. 1989). In that case, after the presentation of evidence, the district court instructed the jury on the Robles's negligence claim. In accordance with Texas law, the district court twice instructed the jury that if it found Robles more than 50% responsible for her own injuries, she would be barred from recovering any damages from Exxon. *Robles,* 862 F.2d at 1202-03. When the jury returned its verdict, it had found that Robles was 51% negligent and Exxon was 49% negligent. Upon receiving the verdict, to which all the jurors assented to, the trial judge, before discharging the jury, noted that Robles would recover no damages. *Id.* at 1203. A little later, a marshal informed the judge that the jury forewoman thought that there was a "misunderstanding". The court called the jurors back to the courtroom and proceeded to elicit unsworn testimony from them as to the "misunderstanding". It became clear that the jurors had understood that, if they found Robles more than 50% negligent, then the judge would determine and award damages. *Id.* In light of this, the district court sent the jury back for further deliberations, after which, they found Robles 49% negligent and Exxon 51% negligent and awarded damages in the amount of $85,450.00. *Id.* at 1204.

¶26. On appeal, the Fifth Circuit held as follows:

> The district court was correct when it noted that we have held that rule 606(b) does not bar juror testimony as to whether the verdict delivered in open court was actually that agreed upon by the jury. See *United States v. Dotson,* 817 F.2d 1127, 1130 (5th Cir.), modified on rehearing, 821 F.2d 1034 (5th Cir. 1987); *University Computing Co. v. Lykes-Youngstown Corp.,* 504 F.2d 518, 547-48 n. 43 (5th Cir. 1974). These holdings simply embody the sound reasoning that such inquiries are not directed at the "validity" of the verdict and thus are not covered by the rule. In *Dotson,* we noted that the admission of such testimony was proper to investigate the possibility of "a clerical error in a verdict," not its "validity" in the sense of being correct or proper, and that the cases to which this exception would apply are "few and far between." 817 F.2d at 1130. This is not such a case. The error here is not "clerical," as would be the case where the jury foreperson wrote down, in response to an interrogatory, a number different from that agreed upon by the jury, or mistakenly stated that the defendant was "guilty" when the jury had actually agreed that the defendant was not guilty. Rather, the error alleged here goes to the substance of what the jury was asked to decide, necessarily implicating the jury's mental processes insofar as it questions the jury's understanding of the court's instructions and application of those instructions to the facts of the case.

*Id.* at 1207-08. In a footnote, the *Robles* court clarified its understanding of what is a "clerical" error. It said;

> The category of "clerical" errors described in *Dotson,* therefore, can be understood to refer only to discrepancies between the verdict delivered in court and the precise verdict physically or verbally agreed to in the jury room, not to discrepancies between the verdict delivered in court and the verdict or general result which the jury testifies it "intended" to reach.

*Id.* at 1208 n. 9.

¶27. Other circuits have also followed this "clerical" error exception to Rule 606(b), however some have interpreted it more strictly than others. See *Karl v. Burlington N. R.R.,* 880 F.2d 68, 74 (8th Cir. 1989)(recognizing that rule 606(b) does not bar juror testimony as to whether the verdict delivered in court was that actually agreed upon by the jury, but holding that the error in question was not "clerical" but went to the "validity" of the verdict, where jurors' testimony and affidavits contained specific references that concerned the jurors' mental processes); *Attridge v. Cencorp Div. Of Dover Tech. Int'l, Inc.,,* 836 F.2d 113, 116-17 (2nd Cir. 1987)(recognizing that juror testimony is admissible to show that the verdict delivered was not that actually agreed upon, and holding that the interviews conducted by the judge were intended to resolve doubts regarding the accuracy of the verdict announced, and not to question the process by which those verdicts were reached); *Plummer v. Springfield Terminal Ry.,* 5 F.3d 1, 3-4 (1st Cir. 1993)(agreeing that juror testimony regarding an alleged clerical error such as announcing a verdict different than that agreed upon, does not challenge the validity of the verdict or the deliberation or mental processes, and therefore is not subject to Rule 606(b)); *McCullough v. Consolidated Rail Corp.,* 937 F.2d 1167, 1171-72 (6th Cir. 1991) (recognizing that jurors are competent witnesses on the issue of whether the verdict delivered was the one agreed upon, and holding that it was not error to allow jurors to testify, where the judge limited his inquiry to whether the jury intended an award of $235,000 minus fifty percent, because he did not inquire into the thought processes of the jurors, but merely asked for clarification of the final award);*Continental Cas. Co. v. Howard,* 775 F.2d 876, 885-86 (7th Cir. 1985)(agreeing that Rule 606(b) does not bar testimony by a juror that all jurors agree that through inadvertence, oversight or mistake the verdict announced was not the verdict on which agreement had been reached, but holding that where jurors were polled and affirmed the verdict, and remained silent when asked if they objected to the verdict, and where attorney who had been admonished not to contact jurors but did so anyway, trial judge was not in error in striking affidavit because it was an attempt to testify regarding the jury's thought processes).

¶28. It is this Court's opinion that the proper course in this situation is to allow for this very limited and logical extension of the rule. In practice, the rule simply would not apply to a situation where a jury reports a verdict that is not the actual verdict voted and agreed upon.

¶29. The case *sub judice* is very similar, fact-wise, to the *Dotson* case. This case presents for this Court the most limited circumstance in which this situation could arise. That is, this is one of those cases where the jury reported a verdict of "guilty", but actually voted and agreed to find the defendant "not guilty." In that sense, this holding is very limited, and one of those "few and far between" cases. We further limit the holding by adopting the footnote from *Robles* in which "clerical" error is defined. We find that this case should be remanded to the trial court for a hearing to determine the true verdict of the jury. We do not today hold that there was in fact a clerical error in the jury's delivery of its verdict. Rather, we remand the case to the trial court for its determination on that point. If the trial court finds that there was a clerical error in the transmission or reporting of the jury's verdict, then it should resentence Martin in accordance with the proper verdict.

¶30. As stated earlier, the State submits that the trial court did not have jurisdiction to hear Martin's motion to set aside the verdict because at the time it was presented, Martin had already filed his Notice of Appeal with this Court. We will not impose the procedural bar in this case because substantial constitutional rights are affected here. Furthermore, we hold that the trial court has the

inherent authority to make a determination as to whether there has been a clerical error in the reporting of the jury's verdict, and if there has been such an error the court has the authority to correct it.

## IV. THE EVIDENCE FAILS TO SUPPORT MARTIN'S CONVICTION FOR A SCHEDULE II CONTROLLED SUBSTANCE.

¶31. Martin was indicted, tried, and convicted of possession of morphine in violation of Miss. Code Ann. § 41-29-139(c)(1), which provides:

> (c) It is unlawful for any person knowingly or intentionally to possess any controlled substance...
>
> Any person who violates this subsection with respect to:
>
> (1) A controlled substance classified in Schedule I or II, as set out in Sections 41-29-113 and 41-29-115, except marihuana, is guilty of a felony and upon conviction may be imprisoned for not more than three (3) years and shall be fined not less than One Thousand Dollars ($1000.00) nor more than Thirty Thousand Dollars ($30,000.00) or both;

Miss. Code Ann. § 41-29-139(c)(1) (1993). Miss. Code Ann. § 41-29-115(A)(a)(1)(xiii) (1993) lists morphine as a Schedule II substance. However, Miss. Code Ann. § 41-29-117(d)(8) (1993) lists morphine as a Schedule III substance if it is in a quantity not more than 50 milligrams. Possession of a Schedule III substance is punishable, as a misdemeanor, under Miss. Code Ann. § 41-29-139(c)(3) (1993), which provides:

> (3) A controlled substance classified in Schedule III, IV, or V as set out in Sections 41-29-117 through 41-29-121, upon conviction, may be confined for not more than one (1) year, or fined not more than Five Thousand Dollars ($5000.00), or both.

Miss. Code Ann. § 41-29-139(c)(3) (1993).

¶32. Martin argues, that at trial, the evidence failed to prove the amount of morphine possessed. This is true. The only evidence from the pathologist concerning the morphine was that "the syringe did, indeed, contain morphine." Martin argues that this Court has long recognized the rule that where it is unclear which of two penalties applies, a defendant must be sentenced under the law which imposes the least severe penalty.

¶33. In this case, Martin was convicted of possession of morphine. The question is whether he was entitled to be sentenced under a statute carrying a lesser penalty where the state did not prove the amount of morphine that he possessed. This Court addressed this situation in *Clubb v. State,* 672 So. 2d 1201, 1204 (Miss. 1996), where it said:

> As held by this Court in *Beckham v. State,* 556 So. 2d 342, 343 (Miss. 1990), where two or more statutes could apply to the same conduct, the State is not required to prosecute an individual under a statute providing for a lesser penalty. But where two or more statutory provisions could apply to the defendant's conduct, and the indictment itself is ambiguous as to which statute is being charged, a defendant may be sentenced only under the provision

providing the lesser penalty.

*Clubb,* 672 So. 2d at 1204. Under *Clubb,* Martin should be resentenced under Count I of the indictment. Two or more statutory provisions apply here, and the indictment is silent as to the amount of morphine Martin was charged with possessing. Therefore, Martin should have been sentenced under the misdemeanor provision.

¶34. However, this issue may be moot, if the trial court, on remand, finds that a clerical error existed in the transmission of the jury's verdict. In that case, the trial court will enter a verdict of "not guilty" on Count I. If the trial court finds that there was no clerical error in the reporting of the jury's verdict, and that Martin was in fact found "guilty" on Count I, then Martin should be resentenced under the misdemeanor provision as is discussed above.

## CONCLUSION

¶35. This case presents a matter of first impression regarding a jury's impeachment of its verdict. This Court holds that a very limited "clerical" error exception to Miss.R.Evid. 606(b) is warranted and proper. We do not attempt to change the rule disallowing a jury's impeachment of its verdict. That has always been the law in this State and is not affected by this decision. However, we do believe that juror testimony may be received to show that the verdict delivered in court was not the verdict actually agreed upon by the jury, but was the result of clerical error. Therefore, we remand the case *sub judice* to the trial court for a determination of whether a clerical error occurred in the jury's transmission of its verdict. If the trial court finds that there was a clerical error with respect to the verdict, then it will amend the verdict to reflect the true verdict of the jury. Consequently, if the court finds a clerical error in this case, it will acquit Martin of Count I, possession of morphine. In that instance, the fourth issue presented by Martin will be moot, and resentencing will be unnecessary. If however, the trial court finds that there was not a clerical error with respect to the jury's verdict, Martin should be resentenced on Count I in accordance with this opinion.

¶36. **REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., SULLIVAN, P. J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**